# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DEAN FUERSTENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 10469 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| JOHN E. ZARUBA and JAMES | ) | |
| CORCORAN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dean Fuerstenberg has filed this lawsuit pursuant to 42 U.S.C. § 1983 against Defendants Dr. James Corcoran, the Psychiatric Services Medical Director at DuPage County Jail (the "Jail"), and John Zaruba, Sheriff of DuPage County,[1] alleging they violated his constitutional rights under the Fourteenth Amendment. Specifically, Fuerstenberg claims that Dr. Corcoran and Zaruba were deliberately indifferent to his medical needs, by failing to adequately treat his clinical depression, including the circumstances that led up to his attempted suicide on November 19, 2013. He has sued Dr. Corcoran in his individual capacity (Count I) and has sued both Dr. Corcoran and Zaruba in their official capacities (Count II).

Defendants have moved for summary judgment,[2] arguing that Fuerstenberg failed to exhaust his administrative remedies before filing his § 1983 claims as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Fuerstenberg has cross-moved for

---

[1] The parties dispute whether Zaruba, as the elected sheriff, is employed by DuPage County, *see* Defs.' LR 56.1(b)(3)(B) ¶ 2, but this issue is not material to the current motions.

[2] Although Defendants have styled their motion as a motion to dismiss, both parties have submitted statements of facts under Local Rule 56.1, which applies to motions for summary judgment, as well as a list of stipulated facts. Accordingly, the Court treats the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Burrell v. Powers*, 431 F.3d 262, 284 (7th Cir. 2005).

summary judgment regarding the same issue. For the reasons provided herein, Defendants'

motion is granted in part and denied in part, and Plaintiff's motion likewise is granted in part and

denied in part.

**Factual Background[3]**

Fuerstenberg was booked into the Jail on or about August 30, 2011. Stipulated Facts

(Stip.) ¶ 1, ECF No. 38. Upon his arrival at the Jail, Fuerstenberg received the DuPage County

Jail Inmate Rules and Regulations (Inmate Handbook). *Id.* ¶ 2.

The Inmate Handbook provides procedures for submitting a Health Service Request

(HSR). *Id.* ¶ 6. To submit an HSR for non-emergency care, inmates are directed to complete an

HSR form and deposit it in a white medical box bearing a Red Cross located in the housing unit.

*Id.* ¶ 6; *see also* Defs.' Ex. 2, Health Care Requests and Services Policy, ECF No. 39-2.

In addition to instructing inmates on how to file an HSR, the Inmate Handbook provides

procedures for filing a grievance "relating to the conditions of their confinement," including

complaints related to health services, medical care, and mental health concerns. Stip. ¶¶ 4, 8.

Under these procedures, an inmate must first attempt to resolve the grievance by contacting,

either in person or in writing, the appropriate Jail staff member, whose area of responsibility is

related to the grievance. *Id.* If that person is unable to resolve the grievance, then an inmate

must submit a written request[4] regarding his or her grievance in mailboxes that are installed and

maintained in the Jail or to the Special Services Manager or Chief of the Jail. *Id.* ¶ 4.

---

[3]     Except where indicated, the following facts are undisputed.

[4]     Although the stipulated facts indicate that both HSR and grievance forms are available to inmates
at the jail, *see id.* ¶ 7, the parties dispute whether written grievances must be submitted on a specific form,
*see* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1, ECF No. 43. Because this motion turns on the availability of the
grievance procedure itself, this disputed fact also is not material to the motions.

Grievances must be filed within fourteen calendar days of the event giving rise to the grievance, but "[c]onsideration will be given to legitimate delays in filing a grievance." *Id.*

Upon receipt of an inmate's grievance in writing, the Special Services Manager takes whatever actions are needed to resolve the grievance. *Id.* ¶ 5. When the work is completed, the Special Services Manager provides the inmate with a written resolution of the grievance. *Id.*

Fuerstenberg submitted an HSR form on October 26, 2011, seeking treatment from Dr. Corcoran for depression.[5] *Id.* ¶ 10; Pl.'s Reply, Ex. A, 10/26/11 Health Services Request, ECF No. 50-1. Dr. Corcoran evaluated Fuerstenberg on November 16, 2011, and prescribed an anti-depressant. Stip. ¶ 11. Dr. Corcoran later increased the prescribed dosage of the anti-depressant on December 17, 2011. *Id.* ¶ 12. Between December 17, 2011, and November 19, 2013, Fuerstenberg was assessed by the Jail's medical staff no less than twenty-six times, and Dr. Corcoran authored, signed, and dated seventeen of Fuerstenberg's "Progress Notes" during that period. *Id.* ¶ 13.

On three separate occasions, Fuerstenberg was placed on "Emotional Watch" during which he was transferred from his usual cell on the second floor of the Jail to the first floor. *Id.* ¶ 16. His third stint on Emotional Watch ran from October 7 to October 9, 2013. *Id.* On October 7, mental health staff members at the Jail observed that Fuerstenberg's "affect and mood appear[ed] depressed" and that he "admit[ted] feeling sad with little regard for his life." *Id.* ¶ 18. When asked how he was feeling the next day, Fuerstenberg denied having suicidal thoughts. *Id.* ¶ 19. Dr. Corcoran and an unnamed Watch Commander indicated that Fuerstenberg could be returned to "Open Administrative Segregation" on October 9, 2013, with psychiatric services to follow up. *Id.* ¶ 20. He was then transported from a first floor receiving cell to the second floor.

---

[5]      Although it is undisputed that Fuerstenberg submitted four HSRs, *see id.* ¶ 10, only the HSR submitted on October 26, 2011, is pertinent to this motion.

*Id.* ¶ 45. According to Fuerstenberg, the psychiatric follow up never occurred. Pl.'s Resp. Br. at 8–9.

On November 19, 2013, Fuerstenberg attempted suicide by jumping from the second floor of the Jail. He landed on his neck and back on the concrete floor. *Id.* ¶¶ 21–22. He was taken to Central DuPage Hospital for treatment of his injuries, which included complete paraplegia from the waist down. *Id.* ¶ 23; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5, ECF No. 51. According to Central DuPage Hospital records, Fuerstenberg had control of his upper extremities and his speech was clear and appropriate on the day he was admitted. Stip. ¶ 26. He was "deemed competent" by the hospital to provide informed consent and to make his own medical decisions about his treatment on December 2, 2013, thirteen days after the incident. *Id.* ¶ 28.

Fuerstenberg remained at Central DuPage Hospital until his transfer to the University of Illinois in Chicago Hospital's Acute Care Center (UIC) for rehabilitation on December 6, 2013. *Id.* ¶ 24. While at UIC, Fuerstenberg indicated that he was again having suicidal thoughts. *Id.* ¶ 29.

Due to health complications related to a blood clot, fevers, and a urinary tract infection, Fuerstenberg was transferred back to Central DuPage Hospital on December 18, 2013. *Id.* ¶ 30. While being treated there, Fuerstenberg was sentenced in his criminal case on January 24, 2014. *Id.* ¶ 29. The hospital then discharged Fuerstenberg to the custody of the Illinois Department of Corrections (IDOC) on January 27, 2014, to serve his sentence. *Id.* ¶ 30. Fuerstenberg thus never returned to the Jail, and he is currently incarcerated at Centralia Correctional Center (Centralia). *Id.*; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1.

During his hospitalization at both Central DuPage Hospital and UIC, Fuerstenberg remained in the custody of the DuPage County Sheriff's Office, which provided sheriff's deputies to guard Fuerstenberg. Stip. ¶¶ 31–32. These deputies never informed Fuerstenberg how to submit a grievance while in the hospital, and Fuerstenberg never asked about it. *Id.* The deputies assert that they could have provided Fuerstenberg with a grievance form if Fuerstenberg had asked for one, but he never did. *Id.* ¶ 32. The parties agree that Fuerstenberg was not allowed any personal possessions while he was hospitalized. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.

Other than Fuerstenberg's October 26, 2011, HSR seeking treatment from Dr. Corcoran for depression and three HSRs unrelated to this litigation, it also is undisputed that Fuerstenberg never submitted an oral or written grievance while at the Jail or in the hospital. Stip. ¶ 34. He mailed the present complaint while he was incarcerated at Centralia on November 11, 2015; it was received by the Court on November 19. *Id.* ¶ 33.

**Legal Standard**

Although Defendants styled their motion as a motion to dismiss, for the reasons discussed *supra* n.2, the Court will treat the motion—as well as Plaintiff's cross-motion—as motions for summary judgment under Rule 56. Pursuant to that rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). On cross-motions, each party bears its respective burden in establishing its

right to summary judgment, *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017), and factual inferences are viewed in the non-movant's favor for each motion, *see Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

Under the PLRA, "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It has long been recognized that "[c]omplaints about medical treatment in prison are complaints about 'prison conditions'" under the PLRA. *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004) (quoting *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999)) (internal quotation marks omitted); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002). Furthermore, the failure to exhaust administrative remedies is an affirmative defense for which the defendant carries the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is decided by the judge, not a jury, because it is an issue of "judicial traffic control" rather than a verdict. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008).

For cases in which exhaustion is contested, the Seventh Circuit has outlined a three-step process for the trial court to follow before reaching the merits of a case. *Id.* at 741–42. The first step is to convene a *Pavey* hearing, where the court hears argument and the parties present evidence on the issue of exhaustion. *Id.* at 742. At the second step, the court determines whether the plaintiff exhausted his or her administrative remedies and whether any failure to exhaust was "innocent" or "the prisoner's fault." *Id.* In conducting this analysis, the court considers whether step three—pretrial discovery—is necessary. *Id.* That said, where neither party has requested a *Pavey* hearing and exhaustion does not hinge on a resolution of a factual dispute, a *Pavey* hearing is unnecessary. *See Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015). Here, neither party has requested a *Pavey* hearing. Nor does the resolution of the cross-motions require

the Court to decide a disputed issue of fact. Accordingly, the Court's analysis for the purposes of this motion begins and ends at step two.

## Analysis

Defendants argue that Fuerstenberg failed to exhaust his administrative remedies prior to filing suit as required by the PLRA. Defs.' Br. Supp. Mot. Dismiss 1, ECF No. 40. In response, Fuerstenberg advances two arguments to demonstrate that he has exhausted all available remedies. First, he maintains that his HSR from October 26, 2011, operated as a grievance that was never resolved and, thus, remained pending through the remainder of his detention at the Jail. Pl.'s Mem. Opp'n Mot. Dismiss & Br. Supp. Partial Summ. J. 7–11, ECF No. 41. Second, Fuerstenberg argues that, even if the Court holds that the HSR was not a grievance, the grievance process was unavailable after his suicide attempt. *Id.* at 11–16.

It should be noted at the outset that, based upon a review of the complaint and Plaintiff's summary judgment briefs, the scope of Fuerstenberg's deliberate indifference claim is not entirely clear. At times, he characterizes his claim as one grounded in Defendants' failure to adequately treat his clinical depression generally. *See, e.g.,* Pl.'s Resp. Mem. at 7, ECF No. 41. At others, his claim seems to focus on the circumstances immediately preceding his attempted suicide and the failure of Defendants to prevent it. *See, e.g., id.* at 4 (noting that the Amended Complaint asserts that Defendants failed to provide "better treatment for his depression . . . when he attempted suicide at the Jail"); Am. Compl. ¶ 51, ECF No. 17 ("Defendants knew that Mr. Fuerstenberg faced a substantial risk that [he] may commit suicide, and they disregarded that risk by placing him on the second floor of the Jail and/or otherwise failed to take reasonable measures to prevent Mr. Fuerstenberg from attempting suicide by jumping from the second floor of the Jail."). As will be seen, the distinction matters.

## I. HSR as a Grievance

On October 26, 2011, Fuerstenberg submitted an HSR seeking treatment for his depression. Fuerstenberg argues that this HSR qualifies as a grievance that satisfied his exhaustion obligation under the PLRA.

The Supreme Court has held that the PLRA requires "proper exhaustion" for all complaints about prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion," a concept from administrative law, "means using all steps that the agency holds out, and doing so *properly*." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The standard is a strict one. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Failure to make timely use of the administrative remedies can result in the prisoner's claim becoming "indefinitely unexhausted." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Pozo*, 286 F.3d at 1025).

Fuerstenberg attempts to characterize his HSR filed on October 26, 2011, as a grievance because it "related to the treatment of his depression." Pl.'s Mem. at 7–8. To this end, Fuerstenberg argues that the Inmate Handbook "does not preclude the use of a written request for medical attention as a grievance." Pl.'s Reply Br. Supp. Partial Summ. J. 4, ECF No. 52. Fuerstenberg also contends that because the HSR sought treatment for depression, the HSR put Dr. Corcoran and the Jail on notice that the treatment for his depression was inadequate at the time. Pl.'s Mem. at 7–8; *see* Stip. ¶ 10 (stating that HSR sought treatment for depression).

Defendants respond that, even if the Jail's grievance process permits an inmate to file a written grievance for medical attention, the undisputed facts show that filing an HSR is not the equivalent of filing a grievance. *See* Defs.' Reply & Resp. Br. at 6–7. Because the Inmate Handbook treats the filing of HSRs and grievances as two separate and distinct processes, the Court agrees. *See* Stip. ¶¶ 4–6; *see also* Defs.' Ex. 2, Health Care Requests and Services Policy

First, Jail detainees are instructed to deposit HSR forms and written grievances in two different places. HSRs are to be placed in a white "medical box" bearing the Red Cross, Stip. ¶ 6, while grievances, if not resolved directly with the appropriate person with the relevant area of responsibility, are to be submitted in mailboxes managed by the Administrative Commander to the Chief of Corrections, *id.* ¶ 4. Second, the two processes are managed by different personnel at the Jail. *Id.* Medical staff members address and respond to HSRs, while the Special Services Manager is the person who addresses and responds to grievances. *Compare id.* ¶ 6, *with id.* ¶ 4. There is nothing in the record to indicate that an HSR form directed exclusively to medical staff members would provide notice to, or prompt action by, the Special Services Manager in charge of grievances. Accordingly, the Court finds that Fuerstenberg's filing of the HSR on October 26, 2011, was not equivalent to the filing of a grievance and does not constitute an exhaustion of his administrative remedies. *See Pozo*, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Thus, Fuerstenberg's failure to exhaust his administrative remedies would preclude him from pursuing his deliberate indifference claim.

But this is only true to the extent that Fuerstenberg's deliberate indifferent claim is based upon the general theory that Defendants failed to adequately treat his clinical depression from 2011, until approximately October 9, 2013, when Fuerstenberg was returned to "Open Administrative Segregation" on the second floor of the Jail, and provided no follow-up psychiatric services. *See Stip.* ¶ 20. To the extent that Fuerstenberg's claim is directed at Defendants' alleged deliberate indifference immediately leading up to his suicide attempt on November 19, 2013, it is difficult to see how he could have filed a grievance complaining about Defendants' failure to prevent his suicide attempt *before* November 19, when the attempt itself is

the event that would have triggered the grievance.[6]  Accordingly, the Court finds that Fuerstenberg's failure to fail a grievance before November 19 does not preclude him from pursuing this more limited claim.  *See Collins v. Seeman*, No. 02 C 4493, 2004 WL 406773, at *2 (N.D. Ill. Feb. 26, 2004) ("[I]t goes without saying that it would be nonsensical to read the PLRA as requiring a prisoner to pursue administrative remedies with respect to his imminent suicide . . . before . . . its occurrence.").

## II.     Whether the Grievance Process Was Unavailable After November 19

Defendants additionally argue that Fuerstenberg could have filed a grievance regarding this more limited claim after his suicide attempt on November 19 but failed to do so.  In response, Fuerstenberg contends that the grievance process was unavailable to him after he was transferred to the hospital on November 19 and that his failure to file a grievance should be excused.  After all, a plaintiff is not obligated to exhaust administrative remedies that are unavailable.  *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Pavey*, 544 F.3d at 742. Remedies are unavailable when there are "omissions by prison personnel, particularly [in] failing to inform the prisoner of the grievance process."  *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016).

In this case, Fuerstenberg asserts that the Jail never informed him of the grievance process that applies to detainees hospitalized off-site.  "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."  *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015).  Thus, a remedy is unavailable if the inmate has no way of knowing the proper procedure.  *Hernandez*, 814 F.3d at 843 (jail failed

---

[6]     To the extent that Defendants would argue that Fuerstenberg should have filed a grievance between October 9 and November 19, there is no evidence that Fuerstenberg had suicidal ideations prior to the time that he jumped.  *See generally* Stip. ¶¶ 1–34; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1–7; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1–6.

to inform detainee of grievance process or give him the handbook during his hospitalization). "It is not incumbent on the prisoner 'to divine the availability' of grievance procedures." *Id.* (quoting *King*, 781 F.3d at 896); *see Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (stating that remedies are unavailable if the "facts on the ground demonstrated that no such potential" of relief exists).

For their part, Defendants contend that the grievance procedure operates in the same way whether a detainee is housed at the Jail or at an outside hospital. Defs.' Reply & Resp. Br. at 12. A review of the record indicates that Fuerstenberg had received a copy of the Inmate Handbook outlining the grievance procedure when he arrived at the Jail. Stip. ¶¶ 2–3. It is also undisputed that he did not have a copy of the Inmate Handbook during his hospitalization. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6. But even assuming that Fuerstenberg had committed the Handbook to memory before the incident, the Handbook does not provide any procedure by which a detainee who is housed off-site can comply with the grievance requirements. *See* Stip. ¶¶ 3–5, 8.

The Jail's grievance procedure requires an inmate to resolve a grievance by "contacting in person or in writing, the appropriate jail staff member." *Id.* The procedure also requires an aggrieved inmate to submit a written request to the internal mailboxes maintained by the Administrative Commander to the Chief of Corrections for that purpose, which is then directed to the Special Services Manager. *Id.* But these procedures are directed exclusively at detainees who reside within the confines of the Jail. It does not state that the same procedures would apply to an aggrieved detainee who is housed at an off-site facility such as a hospital.

Additionally, Defendants argue that an alternative grievance procedure was available to Fuerstenberg during his hospitalization. Defs.' Reply & Resp. Br. at 12. According to Defendants, Fuerstenberg could have submitted a written grievance to the deputies guarding his

hospital room. *Id.* The Inmate Handbook, however, does not provide for such an alternative procedure. *See* Stip.. ¶¶ 3–5, 8. What is more, it is undisputed that the deputies guarding Fuerstenberg during his hospitalization did not inform him of an alternative grievance process or how Fuerstenberg might submit a grievance from the hospital. *Id.* ¶ 32.[7] And Defendants have failed to point to a single instance in which a detainee has filed a written grievance while hospitalized to support their position that a grievance procedure was available to Fuerstenberg. Similarly, Defendants have not adduced any evidence of a procedure by which Fuerstenberg could have submitted a grievance with Jail personnel once he was transferred to Centralia. In short, Defendants cannot expect Fuerstenberg to "divine the availability" of such procedures, even if they were to exist. *See King*, 781 F.3d at 896. Nor does it matter that Fuerstenberg did not ask for a grievance form, because he cannot be expected to inquire about a procedure of which he has no knowledge. Accordingly, based on the uncontroverted facts in the record, the Court finds that there were no alternative grievance processes available to Fuerstenberg after November 19, 2013.

## Conclusion

For the reasons stated herein, Defendants' motion for partial summary judgment [40] and Plaintiff's cross-motion for partial summary judgment [47] are granted in part and denied in part. Defendants are granted summary judgment as to Plaintiff's claim that Defendants were deliberately indifferent to his medical needs by failing to treat his clinical depression from 2011

---

[7]     Defendants rely on the affidavit of Sergeant John Mondelli to assert that Fuerstenberg could have obtained a grievance form from the deputies guarding him—a procedure, by the way, that is nowhere contained in the Inmate Handbook. *Id.* at 12. *Compare* Defs.' Ex. 1, Mondelli Aff. ¶¶ 7–8, ECF No. 39-1, *with* Stip. ¶¶ 4–5. Putting aside the fact that this alternative procedure was never explained to Fuerstenberg, there is no evidence in the record that Fuerstenberg would have had access to a pen or pencil to fill out a form, given the undisputed fact that Fuerstenberg was not allowed any personal belongings during his hospitalization. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.

to approximately October 9, 2013.  As to Plaintiff's claim that Defendants were deliberately indifferent during the days immediately leading up to November 19, 2013, by failing to take steps to monitor him and prevent him from attempting to commit suicide, Defendant's motion is denied, and Plaintiff's cross-motion for summary judgment is granted.  The more limited claim may proceed.

**IT IS SO ORDERED.**             **ENTERED   9/27/17**

_____
**John Z. Lee**
**United States District Judge**